UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DARREN DEON JOHNSON,

        Plaintiff,                Case No. 1:20-cv-802

v.                                   Honorable Paul L. Maloney

SHERRY BURT et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections (MDOC) and Washington.

### Discussion

**I.    Factual Allegations**

Plaintiff presently is incarcerated with the MDOC at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains

occurred at that facility. Plaintiff sues the MDOC, its Director, Heidi Washington, and MCF Warden Sherry Burt.

The following facts are taken from Plaintiff's complaint (ECF No. 1), his brief in support (ECF No. 4) of his motion for temporary restraining order and preliminary injunctive relief (ECF No. 3), and his sworn declaration (ECF No. 5). Plaintiff alleges that Defendants have demonstrated deliberate indifference to his health and safety by mixing groups of inmates who tested positive for COVID-19 with other inmates in Plaintiff's unit who tested negative, including Plaintiff. Plaintiff claims that inmates are becoming infected in the showers, bathrooms, and chowhall. In addition, Plaintiff alleges that Defendant Warden Burt refuses to test the staff for COVID-19, requiring only that staff be monitored for fever, and that a staff member who contracted the disease was responsible for an outbreak at MCF.

Plaintiff asserts that, on July 24, 2020, inmate Shannon was escorted out of the prison for a medical visit and was returned without being tested or quarantined. Shannon allegedly was exposed to a staff member who subsequently was diagnosed with the disease. Shannon began to experience COVID-19 symptoms within a few days. He was immediately removed from Unit 2 of the facility and taken to a hospital. On July 27, 2020, Defendant Warden Burt notified the prison population of the first COVID-19 case in the facility. On July 31, 2020, Defendant Burt notified prisoners that the facility had six positive cases and that the number of cases was growing. At that point, Defendant Burt began moving inmates without waiting for their test results, including moving inmates to Plaintiff's unit. On August 3, another 5 inmates tested positive for the disease, and by August 11, 2020, 331 inmates tested positive.

On August 12, 2020, all MCF inmates were swab-tested for the virus. On August 14, 2020, inmates were advised that 691 prisoners had tested positive for COVID-19. Plaintiff

was diagnosed with COVID-19 on August 15, and he was removed from his unit and placed in a garage-like facility with 20 to 30 other prisoners who had tested positive. Plaintiff has asthma and thyroid cancer and has previously suffered a mild heart attack, making him particularly susceptible to experiencing serious symptoms of the disease. He currently is suffering fever, chills, chest pain, shortness of breath, sore throat, nausea, muscle aches, headaches, eye pain, blurry vision, and loss of taste and smell. Plaintiff alleges that he continues to be confined under conditions that make it likely he will re-contract the virus and or die from his prior exposure.

Plaintiff seeks declaratory relief and an injunction directing Defendants to temporarily release Plaintiff from prison for the duration of the pandemic, to avoid his re-contracting the virus and dying. Plaintiff also seeks compensatory and punitive damages.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court

3

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.     Release from Custody

Plaintiff seeks release from custody, both in his motion for temporary restraining order and in his complaint. Although constitutional challenges to the conditions of confinement are proper subjects for relief under 42 U.S.C. § 1983, the Supreme Court has made clear that constitutional challenges to the fact or duration of confinement are the proper subject of a habeas corpus petition rather than a complaint under 42 U.S.C. § 1983. *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). "The Supreme Court has held that release from confinement—the remedy petitioner[] seek[s] here—is 'the heart of habeas corpus.'" *Wilson v. Williams*, 961 F.3d 829, 868 (6th Cir. 2020) (quoting *Preiser,* 411 U.S. at 498). Plaintiff's demand for injunctive relief in the form of release therefore will be dismissed, because it is not available in this action.

### IV. Sovereign Immunity

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court dismisses the MDOC.

### V. Supervisory Liability

Plaintiff fails to make specific factual allegations against Defendant Washington, other than to suggest that she failed to supervise her subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*,

5

532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Washington engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

## VI.     Eighth Amendment

Plaintiff alleges that Defendant Burt was deliberately indifferent to the substantial risk that Plaintiff would contract a serious case of COVID-19, when she authorized moving prisoners who had contracted COVID-19 or whose test results had not yet been received into units with prisoners who had not been diagnosed with COVID-19. He also alleges that Defendant Burt refused to test staff for the virus, resulting in the exposure that led to the outbreak at MCF. Further, he alleges that he is at risk of a second infection because of Defendant Burt's decision to leave him in confinement with prisoners who have the disease.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial

6

of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The Eighth Amendment's deliberate indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In *Wilson*, 961 F.3d 829, the Sixth Circuit squarely held that the significant risk posed by COVID-19 met the objective prong of the deliberate-indifference standard. *Id.* at 840. In addition, in evaluating the subjective component, the *Wilson* court concluded that, because the seriousness of the risk of COVID-19 was obvious, a court could reasonably conclude that Defendants were aware of the risk. *Id.* at 841 (citing *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)). Therefore, the remaining inquiry is whether Defendant Burt, by her actions, "responded reasonably to th[is] risk." *Id.* at 841 (quoting *Farmer*, 511 U.S. at 844).

The Court concludes that Plaintiff's allegations are sufficient to allege the subjective prong of his Eighth Amendment claim against Defendant Burt.

## VII. Pending Motions

Plaintiff has filed a motion for temporary restraining order and preliminary injunctive relief (ECF No. 2). In addition, in his complaint, Plaintiff requests the appointment of counsel.

Because Plaintiff is not entitled to the remedy of release in this action, his motion for TRO also must be denied as moot. The injunctive relief he seeks in his motion is not available in this action.

The Court also will deny Plaintiff's request to appoint counsel. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989). Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should

consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel.  *See Lavado*, 992 F.2d at 606.

The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position.  Plaintiff's request for appointment of counsel (taken from the complaint) therefore will be denied.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants MDOC and Washington will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court also will deny, for failure to state a claim, Plaintiff's prayer for release as a remedy.  Further, the Court will deny Plaintiff's motion for preliminary injunctive relief (ECF No. 3) and his request to appoint counsel.  Plaintiff's Eighth Amendment claim against Defendant Sherry Burt remains in the case.

An order consistent with this opinion will be entered.


Dated:   September 23, 2020                         /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge